UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CARY FARRAH and JAMES H. HARRISON, JR., Individually and on Behalf of All Others Similarly Situated, | ) Civil Action No. _____ ) ) ) |
| Plaintiffs, | ) JUDGE _____ ) |
| vs. | ) ) |
| PROVECTUS BIOPHARMACEUTICALS, INC., H. CRAIG DEES, TIMOTHY C. SCOTT and PETER R. CULPEPPER, | ) CLASS ACTION ) ) ) DEMAND FOR JURY TRIAL |
| Defendants. | ) ) ) |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiffs, individually and on behalf of all others similarly situated, by plaintiffs' undersigned attorneys, for plaintiffs' complaint against defendants, alleges the following based upon personal knowledge as to plaintiffs and plaintiffs' own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiffs' attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Provectus Biopharmaceuticals, Inc. ("Provectus" or the "Company"), as well as media reports about the Company and Company press releases. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all persons who purchased or otherwise acquired Provectus publicly traded securities between December 17, 2013 and May 22, 2014, inclusive (the "Class Period"), against Provectus and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"). These claims are asserted against Provectus and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases and filings with the SEC.

2. Provectus, formerly Provectus Pharmaceuticals, Inc., is a development-stage pharmaceutical company that is engaged in developing pharmaceuticals for oncology and dermatology indications. The Company's main focus is on PV-10, which is intended for the treatment of several life threatening cancers, including metastatic melanoma, liver cancer, and breast cancer.

3. Throughout the Class Period, defendants violated the federal securities laws by disseminating false and misleading statements to the investing public. As a result of defendants' false statements, Provectus stock traded at artificially inflated prices during the Class Period, reaching a high of $5.22 per share on January 22, 2014.

- 1 -
Case 3:14-cv-00338-PLR-HBG Document 1 Filed 05/27/14 Page 2 of 20 PageID #: 2

4. On January 23, 2014, Adam Feuerstein ("Feuerstein") published an article on *TheStreet.com* entitled "The Obsolescence of Provectus' Skin Cancer Drug Means Current Speculative Run Ends Badly," alleging that Provectus management misled investors about the prospects for PV-10, questioning why Provectus had not yet started its promised Phase 3 randomized controlled trial of PV-10 suitable for a Special Protocol Assessment after completing its Phase 2 study in 2010, and speculating that PV-10 may be obsolete in light of new skin cancer drugs being developed.

5. On this news, Provectus's stock price plummeted $3.35 per share to close at $1.87 per share on January 23, 2014, a decline of nearly 64% on volume of 30.5 million shares.

6. On May 20, 2014, Feuerstein noted in an article published on *TheStreet.com* that Provectus had initially described its PV-10 drug as a "breakthrough" drug for skin cancer on its website prior to the Food and Drug Administration ("FDA") designating the drug as such. The description of the drug on the website was later amended to "investigational."

7. Subsequently, on May 21, 2014, an investment community blog on *SeekingAlpha.com* highlighted the failure of Provectus to commence a Phase 3 trial of PV-10, and alleged that the Company was tied to a stock promotion firm whose other stock recommendations were recently halted by the SEC.

8. On the same day, Provectus issued a press release refuting inaccuracies in the blog on *SeekingAlpha.com*. Provectus specifically noted that PV-10, its investigational metastatic melanoma therapy, had not failed the breakthrough therapy designation, but was awaiting a decision from the FDA as to the status of its request. Additionally, Provectus further denied any affiliation with stock promoters.

9. On this news, Provectus's stock price dropped $0.22 per share to close at $2.02 per share on May 22, 2014, a one-day decline of nearly 10% on heavy volume.

10. On May 23, 2014, trading in Provectus stock was halted at $2.02 per share.

11. As a result of defendants' false statements, Provectus securities traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's stock was hammered by massive sales, sending the stock's price down 61% from its Class Period high.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the SEC. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act (15 U.S.C. §78aa).

13. Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District, Provectus operates in this District and certain of the acts complained of herein occurred in this District.

14. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

15. (a) Plaintiff Cary Farrah purchased Provectus securities during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

(b) Plaintiff James H. Harrison, Jr. purchased Provectus securities during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

16. Defendant Provectus specializes in developing oncology and dermatology therapies.

17. Defendant H. Craig Dees ("Dees") is, and at all relevant times was, Chief Executive Officer ("CEO") and Chairman of the Board of Provectus.

18. Defendant Timothy C. Scott ("Scott") is, and at all relevant times was, President and a director of Provectus.

19. Defendant Peter R. Culpepper ("Culpepper") is, and at all relevant times was, Chief Financial Officer ("CFO") of Provectus.

20. The defendants named above in ¶¶17-19 are referred to herein as the "Individual Defendants."

21. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Provectus's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

22. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Provectus. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Provectus securities was a success, as it: (i) deceived the investing public regarding Provectus's prospects and business; (ii) artificially

- 4 -

inflated the prices of Provectus securities; and (iii) caused plaintiffs and other members of the Class to purchase Provectus securities at inflated prices.

## BACKGROUND

23. Provectus is a development-stage pharmaceutical company that is primarily engaged in developing pharmaceuticals for oncology and dermatology indications. The Company has transferred all of its intellectual property related to its over-the-counter products and non-core technologies to its subsidiaries and has designated such subsidiaries as non-core to its primary business of developing its oncology and dermatology prescription drug candidates. The Company focuses on developing its prescription drug candidates PV-10 and PH-10. The Company is developing PV-10 for the treatment of several life threatening cancers, including metastatic melanoma, liver cancer, and breast cancer.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

24. On December 17, 2013, Provectus issued a press release entitled "Provectus Announces Name Change to Provectus Biopharmaceuticals, Inc. and Reincorporates in Delaware." Defendant Dees stated in part:

> "We thank our shareholders for their support as the Company takes these two important steps to protect their interests and communicate our plans for the future."
>
> Dr. Dees added, "We felt that a change in the corporate name to 'Provectus Biopharmaceuticals, Inc.,' better communicates to the public the current and future nature of the Company's business operations and enables the Company to better implement its business plan. In particular, the Company's drug product candidates (pharmaceutical preparations) in both the oncology and dermatology therapeutic areas have either shown, or are expected to show through independent research, a capacity to harness the immune system of those patients treated. For oncology patients, this means using their bodies' own disease-fighting capabilities to aid in reducing their tumor burden in various cancer indications. For dermatology patients, these same immune-system abilities can reduce the inflammation of their various inflammatory dermatoses. Both of these approaches to treat disease relate to properly utilizing the patient's biologic or immune system and not just the direct treatment of his or her disease. Thus, 'biopharmaceutical' is a more apt term. The new name does not affect our business, operations, reporting requirements or stock price but will require a new CUSIP."

25. On December 18, 2013, Provectus issued a press release entitled "Provectus Type C Meeting with FDA Oncology Division held December 16, 2013." The release stated in part:

> Provectus Pharmaceuticals, Inc., a development-stage oncology and dermatology biopharmaceutical company, today announced that it held a Type C meeting with the FDA's Division of Oncology Products 2 on December 16, 2013. The purpose of the meeting was to determine which of the available paths that Provectus' novel oncology drug PV-10 will take in pursuit of FDA approval and commercialization.
>
> Under FDA rules, the agency should issue official minutes to the Company within 30 days after such a meeting; in this case by January 15, 2014. The minutes will clarify the available regulatory paths and, therefore, allow the Company to better estimate a time-line to commercialization of PV-10.
>
> Chief Executive Officer Craig Dees, Ph.D., said, "This meeting with the FDA is a significant step forward in establishing a pathway to initial U.S. approval of PV-10 for the treatment of melanoma. There are different possible routes to approval of PV-10 such as a breakthrough therapy designation or accelerated approval, and each of these has different requirements and time lines. I appreciate that our shareholders are eager to receive as much information as possible, and while there is nothing more the Company can add until it has received the official meeting minutes, we wanted to provide this interim update. In addition, our discussions with several potential international licensing partners are not affected in any way."

26. On January 22, 2014, Provectus's stock price reached its Class Period high of $5.22 per share.

27. On January 23, 2014, Feuerstein published an article on *TheStreet.com* entitled "The Obsolescence of Provectus' Skin Cancer Drug Means Current Speculative Run Ends Badly," which stated in part:

> A speculative mania has overtaken the Pink Sheet stock Provectus Biopharmaceuticals PVCT, triggered by Internet message board and Twitter rumors that FDA officials may sanction an accelerated approval filing of the company's long-delayed skin cancer drug PV-10.
>
> Provectus' stock price has soared from 80 cents per share in December to almost $6 Thursday, doubling in price in the past seven days. Volume has been off the charts. The company's market capitalization now tops $1 billion when warrants and options are included in the total share count – incredible for a bulletin board stock with less than 1% institutional investor ownership, according to S&P CapitalIQ.
>
> Provectus is doing its part to feed the hungry maws of momentum traders, issuing a cryptic press release on Dec. 18 about a meeting with FDA to discuss

Case 3:14-cv-00338-PLR-HBG   Document 1   Filed 05/27/14   Page 7 of 20   PageID #: 7

"possible routes to approval of PV-10 such as breakthrough therapy designation or accelerated approval . . ."

The reasons for Provectus' sit-down with the FDA and the outcome of the meeting have not been disclosed. Provectus further fueled the speculative fervor by issuing an 8-K on Jan. 15 to announce that the receipt of official minutes from the FDA meeting were delayed.

Provectus executives have now gone radio silent. Chief Operating Officer Peter Culpepper agreed to speak with me on Wednesday about PV-10 and the FDA meeting, but he cancelled a few hours before our scheduled phone call. Company spokesman Bill Gordon won't answer questions.

The notion that FDA would bend over backwards to anoint PV-10 with breakthrough therapy designation or endorse a speedy approval pathway is fundamentally absurd, even by the lower standards of today's "anything goes" biotech investment climate.

PV-10 is a diluted solution of Rose Bengal, a stain commonly used to diagnose eye disease. Rose Bengal can be purchased by the gallon from any chemical supply company, although Provectus claims PV-10 is purified Rose Bengal and somehow different.

Provectus has spent years developing PV-10 as a treatment for metastatic melanoma and other diseases. When injected directly into skin cancer lesions, PV-10 supposedly kills the tumor cells. Provectus also claims the drug has an immune system-boosting effect which kills cancer cells in "bystander lesions" not directly injected with PV-10.

The company conducted a single, open-label phase II study of PV-10 in 80 metastatic melanoma patients. The study reported a 51% overall response rate in lesions that were directly injected with PV-10. Thirty-three percent of patients also showed some tumor shrinkage in bystander lesions.

Provectus completed the PV-10 phase II study in 2010, and the company has reported results at various medical meetings in subsequent years. Few, if anyone, in the medical community or on Wall Street took special notice of the PV-10 melanoma data. Provectus has never been able to secure a development partner for PV-10 despite much effort and promises by management. Until very recently, Provectus shares traded for pennies.

For almost two years, Provectus has been promising investors that a randomized, controlled phase III study of PV-10 in melanoma would be started shortly. To help design this registration-quality study, Provectus met with the FDA in April 2010, March 2011 and October 2011, according to the company's SEC filings.

28. On January 23, 2014, Provectus issued a Letter to the Editor in response to Feuerstein's article, which stated in part:

To the Editor:

We are writing in response to Adam Feuerstein's article, "The Obsolescence of Provectus' Skin Cancer Drug Means Current Speculative Run Ends Badly," published on TheStreet.com, January 23, 2014. In it there are several inaccuracies and omissions. For instance, he writes that "PV-10 is a diluted solution of Rose Bengal" that "can be purchased by the gallon from any chemical supply company." In fact, the opposite is true. PV-10 is a sterile, non-pyrogenic, high-purity concentrated solution of rose bengal manufactured specifically for Provectus to modern pharmaceutical standards, under current good manufacturing practice (cGMP), by specialty contract manufacturers. The investigational drug product undergoes comprehensive chemical and biological release testing prior to use in clinical trials. Neither the drug substance nor the drug product are available for third-party purchase from any commercial source and both are of markedly higher purity than commercial dye-grade material referenced by Mr. Feuerstein.

Also, counter to Mr. Feuerstein's claim, the Company furnished a great deal of pertinent information through its independent press agent (not spokesperson) Bill Gordon that he failed to include in his article. For instance, Provectus CEO Craig Dees issued a formal letter on May 13, 2013 which included a "Regulatory Progress" section noting the ongoing process with the FDA and providing insights about options, delays and possibilities being explored. A link to that announcement is also available on the Provectus web site www.pvct.com.

We forwarded, as well, important scientific and medical announcements to Mr. Feuerstein, also omitted from his slanted coverage, regarding PV-10. One announcement, issued by Moffitt Cancer Center on August 22, 2013, highlights how early clinical trials show PV-10 can boost immune response in melanoma tumors, as well as the blood stream. Another, issued by our company on September 30, 2013, highlights important analyses of data from the completed Phase 2 study of intralesional PV-10 in metastatic melanoma as presented at the European Cancer Congress 2013 (ECCO 17- ESMO-38 - ESTRO 32) in Amsterdam, The Netherlands. Both of these announcements are also available on the Provectus site for any readers interested in a more balanced view of the valuable work being done — and recognized – by Provectus on PV-10.

Perhaps most importantly, the company press release on December 18, 2013 clearly stated that our company held a Type C meeting (not an End of Phase 2 meeting) with the FDA on December 16, 2013 "to determine which of the available paths that Provectus' novel oncology drug PV-10 will take in pursuit of FDA approval and commercialization." This press release also referenced an important new regulatory path, breakthrough therapy designation, that wasn't available in April 2012, the time at which Mr. Feuerstein implies the company went "mum" and after which our development program was purportedly static in the face of a rapidly changing commercial and regulatory climate.

Mr. Feuerstein is selective in his choice of comparative metrics in melanoma, citing the 2013 failure of Allovectin-7 to prolong survival in Phase 3 testing while omitting mention of Phase 3 data on T-Vec, reported in a podium presentation at

- 8 -

ASCO in June 2013, showing that this intralesional agent achieved its primary endpoint. While we won't attempt to address the myriad differences between these three agents, this cherry picking of negative data appears to be proffered to imply that PV-10 is destined for similar failure.

Finally, it is public knowledge that members of our corporate advisory board include Pfizer executives and other high profile life science professionals. These additions came as a result of recognition by members of the medical and pharmaceutical communities.

Clearly, Mr. Feuerstein decided not to include the facts I mention. Right now is a critical time for Provectus and while we, necessarily, needed to postpone an interview with him, we certainly offered to reschedule. It is my sincere hope that readers will consider what I have outlined and will continue to make their own decisions about our company and its promising drug in development – both now and following our further FDA-guidance-related announcements.

29. On this news, Provectus's stock price plummeted $3.35 per share to close at $1.87 per share on January 23, 2014, a decline of nearly 64% on volume of 30.5 million shares.

30. On January 24, 2014, Feuerstein published an article on *TheStreet.com* entitled "Provectus Still Won't Answer Key Questions About Skin Cancer Drug PV-10," which stated in part:

> Provectus Pharmaceuticals responded to my column about the obsolescence of its skin cancer drug PV-10 with a "letter to the editor" which was also filed as an 8-K.
>
> Read Provectus' letter closely. It's a non-denial denial which fails to address any of the concerns and questions raised in my column. Provectus executives refuse to explain the delay in starting the phase III study of PV-10 in metastatic melanoma. As I reported, it's been two years since the company told investors that it had completed meetings with FDA and was ready to seek a Special Protocol Assessment (SPA) for the PV-10 phase III study. If PV-10 is such a promising skin-cancer drug, why has Provectus been unable or unwilling to move the drug into a phase III study, as promised?
>
> Provectus also refuses to explain what made the latest meeting with FDA, held Dec. 18, necessary. The company claims an accelerated approval of PV-10 or Breakthrough Therapy designation is being considered. But on what substantive basis? As I reported, the only clinical study conducted with PV-10 in melanoma was completed four years ago and enrolled 80 patients. Does Provectus really expect FDA to consider this tiny study sufficient for an accelerated approval review? How so? Provectus won't say, which speaks volumes.

31. On March 24, 2014, Provectus issued a press release entitled "Provectus Biopharmaceuticals Inc. Submits Application to FDA to Receive Breakthrough Therapy Designation for PV-10 for Treatment of Melanoma – FDA Expected to Make Determination Within 60 Days upon Receipt," which stated in part:

> Provectus Biopharmaceuticals, Inc., a development-stage oncology and dermatology biopharmaceutical company, announced today that it has applied to the FDA for Breakthrough Therapy Designation (BTD) for PV-10 for the treatment of melanoma. FDA guidelines state that the Agency will make a decision on the application within 60 days of receipt. The Agency's records for FY 2013 show that the Agency's Center for Drug Evaluation and Research (CDER) met that guideline 97% of the time.
>
> Craig Dees, PhD, CEO of Provectus said, "The decision to apply for BTD stems from our Type C meeting held with the FDA's Division of Oncology Products 2 in December 2013. At the meeting FDA expressed willingness to work with Provectus toward initial approval for the novel investigational oncology drug PV-10 in locally advanced cutaneous melanoma. This included a statement in the minutes that data in a cohort of patients that received PV-10 to all existing lesions should be submitted in a formal BTD application."
>
> Dees continued, "I want to make clear to our shareholders, the media and the market as a whole that BTD is not guaranteed and if the designation is conferred on PV-10 for melanoma, it does not bypass the need for a new drug application (NDA) and review, as both are required for commercialization of any drug. As I have stated previously, the Agency may yet recommend and it may be in the best interest of Provectus to undertake a small, short bridging study in patients where all tumor burden can be injected. This could occur either before or after we have approval to sell PV-10. Provectus has over $16 million in cash reserves and would not require additional capital or the resources of a partner to conduct such a study. If such a study is conducted, it also fits with needs for an international study supportive of licensure in Australia, Europe, China and India."
>
> Dees concluded, "We are confident that the studies done thus far illustrate the effectiveness and safety of PV-10: if you inject PV-10 into melanoma tumors, the tumors go away. For recurrent, aggressive skin cancers this unique mechanism confers tangible benefit to patients."

32. On May 20, 2014, Feuerstein noted in an article published on *TheStreet.com* that Provectus had initially described its PV-10 drug as a "breakthrough" drug for skin cancer on its website prior to the FDA designating the drug as such. The description of the drug on the website was later amended to "investigational."

33. Subsequently, on May 21, 2014, an investment community blog on *SeekingAlpha.com* highlighted the failure of Provectus to commence a Phase 3 trial of PV-10, and alleged that the Company was tied to a stock promotion firm whose other stock recommendations were recently halted by the SEC. The article stated in part:

- PVCT has just FOUR full-time employees, HQ appears to be a metal barn in rural Knoxville, claim to have effective treatment for cancer with commodity red dye "Rose Bengal."

- PVCT is connected to questionable paid stock promoters whose other recommendations have recently been halted by the SEC: including FSPM, PHOT, and PTOG.

- Insiders were paid ~$49m during a 12+ year period while PVCT shareholders accumulated losses ~$150m with zero revenue and shares outstanding have increased 20x.

\* \* \*

*My research has discovered numerous issues with PVCT including*:

1. PVCT is connected to questionable stock pumpers promoting PVCT including Small-Cap Street LLC. Multiple stocks covered by Small Cap Street LLC have recently been halted by the SEC and I believe PVCT could be next to be halted given its weak disclosures and zero revenue.

2. PVCT's PV-10 researcher Dr. Sanjiv Agarwala has a history of failure and has been sued by the SEC for insider trading. Dr. Sanjiv also recently presided over the famous VICL trial failure, resulting in VICL stock price implosion and drug abandonment.

3. PVCT board and management are associated with multiple, very questionable paid stock promotions and companies that wiped out shareholders.

4. The founders of PVCT's last company, Imcor Pharmaceutical Company which had the PH-10 drug, stock was also a complete shareholder wipeout.

5. PVCT management received stated compensation of $49m since inception while paying over ten million dollars to unnamed "consultants" - all while the company has lost ~$150m and never generated material revenue over the past 12 years.

\* \* \*

7. PVCT's claims of PV-10 are incredulous and the lack of a credible large pharma partner taking a stake in the company or Phase 3 trials strongly indicate the drug is unviable.

1. If PV-10 was so groundbreaking, why is PVCT the subject of a paid promotion campaign with questionable stock promotion outfits?

\* \* \*

PVCT is a reverse merger stock which uplisted this week to the NYSE with an incredible ~$750m market cap after running up over 300% from 80 cents/share under 6 months ago. How did PVCT, a company with $0 revenue and little cash, accomplish this? I believe much of the current demand for PVCT stock is connected to questionable stock promoters potentially aimed at unsophisticated retail investors. When that promotion runs out of steam, I believe PVCT stock price will likely implode as PVCT already has achieved one of the highest market capitalizations I have ever seen for a company of this nature.

In January "Small-Cap Street" issued a report claiming PVCT is worth $62 per share written by "Osman Ghani" whose resume lists no biotech or pharma experience. Osman Ghani has recently authored numerous reports on a variety of stocks as a paid article writer, including NVLX, another penny stock paid promotion. Osman Ghani also recently wrote about PTOG, recently halted by the SEC. In fact, two other stocks covered by Paul Lipp's firms were also halted by the SEC recently (more below).

34. On May 21, 2014, Provectus issued a press release refuting inaccuracies in the blog on *SeekingAlpha.com*. The release stated in part:

It has come to the attention of Provectus Biopharmaceuticals, Inc., a development-stage oncology and dermatology biopharmaceutical company (the "Company" or "Provectus"), that an article was published on seekingalpha.com on May 21, 2014, which contains numerous inaccuracies and misstatements about the Company. Without attempting to address every false statement and inaccuracy contained in the article, the Company wishes to address some of the misinformation with the following facts:

- The article alleges that the Company's oncology drug PV-10 "appears to have failed their Breakthrough Therapy Designation." This statement is completely false. The FDA has not reported back to the Company with respect to the Company's application for Breakthrough Therapy Designation.

- The article indicates that Provectus is "connected to questionable stock pumpers promoting PVCT including Small-Cap Street LLC." To the contrary, Provectus is not connected in any way to Small-Cap Street LLC or any other similar promoter.

- The article indicates that Provectus's patents begin expiring in 2016. In actuality, the most important patent with respect to PV-10 does not expire until 2031, and of the eight patents that expire in 2016, none of the

patents relate to PV-10; seven of the patents relate to medical devices and one relates to dermatology.

- The article's summary concludes by saying "PVCT appears extraordinarily overvalued with ~$750 MILLION fully diluted valuation. I believe fair value is closer to $0 and outline why in this report." Because the article is based on numerous inaccuracies, this "belief" is unfounded.

The legitimacy of any article authored by a pseudonym has to be questioned. The Company is at a loss as to why individuals would be attempting to disparage the Company, but the Company will continue to proceed with our business and plans as we have in the past.

35. On this news, Provectus's stock price dropped $0.22 per share to close at $2.02 per share on May 22, 2014, a one-day decline of nearly 10% on heavy volume.

36. Finally, on May 23, 2014, trading in Provectus stock was halted at $2.02 per share, "pending news."

37. As a result of defendants' false statements, Provectus securities traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's stock was hammered by massive sales, sending the stock's price down nearly 61% from its Class Period high.

## LOSS CAUSATION

38. During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Provectus publicly traded securities and operated as a fraud or deceit on Class Period purchasers of Provectus publicly traded securities by misrepresenting the Company's business and prospects. Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the prices of Provectus publicly traded securities fell precipitously, as the prior artificial inflation came out of the prices over time. As a result of their purchases of Provectus publicly traded securities during the Class Period, plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

- 13 -

## NO SAFE HARBOR

39. Provectus's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

40. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Provectus who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

41. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Provectus publicly traded securities during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

42. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Provectus has over 173 million shares of stock outstanding, owned by hundreds if not thousands of persons.

43.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     whether the prices of Provectus securities were artificially inflated; and

(f)     the extent of damage sustained by Class members and the appropriate measure of damages.

44.     Plaintiffs' claims are typical of those of the Class because plaintiffs and the Class sustained damages from defendants' wrongful conduct.

45.     Plaintiffs will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation. Plaintiffs have no interests which conflict with those of the Class.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47.     Plaintiffs make the allegations herein based upon the investigation of plaintiffs' counsel, which included a review of regulatory filings made by Provectus with the SEC, as well as other regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the

Company. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

48. Plaintiffs incorporate ¶¶1-47 by reference.

49. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

    (a) employed devices, schemes and artifices to defraud;

    (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiffs and others similarly situated in connection with their purchases of Provectus publicly traded securities during the Class Period.

51. Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Provectus publicly traded securities. Plaintiffs and the Class would not have purchased Provectus publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

52. Plaintiffs incorporate ¶¶1-51 by reference.

53. The Individual Defendants acted as controlling persons of Provectus within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Company, and ownership of Provectus stock, the Individual Defendants had the power and authority to cause Provectus to engage in the wrongful conduct complained of herein. Provectus controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

A. Determining that this action is a proper class action, designating plaintiffs as Lead Plaintiffs and certifying plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiffs' counsel as Lead Counsel;

B. Awarding plaintiffs and the members of the Class damages, including interest;

C. Awarding plaintiffs' reasonable costs and attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: May 27, 2014

BARRETT JOHNSTON, LLC
GEORGE E. BARRETT, #2672
JERRY E. MARTIN, #20193
TIMOTHY L. MILES, #21605

*/s/ George E. Barrett*
GEORGE E. BARRETT

217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)
gbarrett@barrettjohnston.com
jmartin@barrettjohnston.com
tmiles@barrettjohnston.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
217 Second Avenue, North
Nashville, TN 37201
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
drobbins@rgrdlaw.com
dwalton@rgrdlaw.com

LAW OFFICE OF ALFRED G.
   YATES, JR., P.C.
ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: 412/391-5164
412/471-1033 (fax)
yateslaw@aol.com

Attorneys for Plaintiffs